**In re Joan B. HART, Debtor.**

**FIRST BANK & TRUST COMPANY OF ITHACA, NEW YORK, Plaintiff-Appellant,**

v.

**Joan B. HART, Defendant-Appellee.**

**Bankruptcy No. 79–BK–02428.**

United States District Court, N. D. New York.

Feb. 6, 1981.

Crossmore & Morrison by Edward Y. Crossmore, Ithaca, N. Y., for plaintiff-appellant.

Bartow & Murphy by Ronald Slocum, Owego, N. Y., for defendant-appellee.

## OPINION AND ORDER

MacMAHON, District Judge.[*]

Plaintiff First Bank & Trust Co. of Ithaca, New York, a creditor of defendant debtor Joan B. Hart, appeals from an order of Bankruptcy Judge Justin J. Mahoney that, pursuant to Section 722 of the Bankruptcy Reform Act of 1978 (the "Act"), 11 U.S.C. § 722, defendant be allowed to redeem her automobile from plaintiff by installment payments. Plaintiff contends that Section 722 permits redemption only by lump-sum payment of the full value of the collateral. For reasons given below, we hold for plaintiff and reverse Judge Mahoney's order.

On November 9, 1979, defendant Joan B. Hart filed for voluntary non-business bankruptcy under Chapter 7 of the Act, 11 U.S.C. §§ 701–766. Among her possessions was a 1976 Dodge Dart on which plaintiff—the only secured creditor—maintained a security interest in the amount of the car's purchase price, $3,314.75.

On April 11, 1980, upon petition by plaintiff, Judge Mahoney issued an order abandoning the car from defendant's estate, pursuant to 11 U.S.C. § 554, thus opening it to repossession by plaintiff. Defendant asserted her right under Section 722 to redeem the car for its then market value and petitioned Judge Mahoney for determination of value and for terms of redemption. By order of June 11, 1980, Judge Mahoney determined the car's market value to be $2,200.00 and directed that redemption payment of that amount be made in monthly installments of $100.00, plus 7% annual interest. It is Judge Mahoney's decision to allow payment by installment that plaintiff now challenges.

Section 722 states that "an individual debtor may ... redeem tangible personal property intended primarily for personal ... use, from a lien securing a dischargeable consumer debt, if such property ... has been abandoned under [S]ection 554...." 11 U.S.C. § 722. Although the section makes clear that the amount of the redemption payment is the "allowed secured claim," that is, the then market value of the collateral, it leaves unspecified the proper *manner* of payment. The legislative history is not particularly helpful either; both the Senate and House reports on Section 722 speak of "pay[ment]," H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 381 (1977), *reprinted in* [1978] U.S.Code Cong. & Ad. News 5787, 5963, 6337; S.Rep.No. 95–989, 95th Cong., 2d Sess. 95 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5881, but specify no particular manner in which it must be made. However, what other clues exist indicate congressional expectation of redemption payment by lump sum only.

To begin with, Section 722 was drawn from the redemption provision of Uniform Commercial Code Section 9–506. *See General Motors Acceptance Corp. v. Miller (In re Miller)*, 4 B.R. 305 (1980). Section 9–506 entitles a property owner to redeem property from a creditor by payment of the full outstanding debt for which the property stands as collateral, 8 U.C.C. § 9–506; the official comment to Section 9–506 makes clear that payment of that amount must be made in lump sum and not in installments.[1] Although Congress clearly intended to "broad[en]" the rights of the debtor previously enjoyed under Section 9–506 by placing the Section 722 redemption provision in the Act, H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 380 (1977), *reprinted in* [1978] U.S. Code Cong. & Ad.News 5963, 6336, it did so primarily by reducing the redemption

---

[*] Chief Judge of the United States District Court for the Southern District of New York, sitting by designation.

1. The official comment to Section 9–506 states that it requires "obviously ... more than a new promise to perform the existing promise; it requires payment in full of all monetary obligations then due...." U.C.C. § 9–506 comment.

amount from that of the full outstanding debt to that of the typically lower market value of the collateral.[2] There is no indication that Congress intended any change from the requirement of Section 9–506 that payment of redemption be in lump sum. *See General Motors Acceptance Corp. v. Miller (In re Miller), supra,* 6 B.C.D. at 437 n.5.

Second, the basic purpose of Congress in enacting Section 722—that of devising an alternative to needless repossession of consumer goods—had as its effectuating statutory instruments not only redemption under Section 722 but also allowance under Section 524 of reaffirmation by the parties of some or all of the debtor's otherwise dischargeable debt. *See General Motors Acceptance Corp. v. Miller (In re Miller), supra,* 6 B.C.D. at 437. Subject to court approval, Section 524(c)(4)(B)(ii) effectively allows the parties to reaffirm that portion of a secured debt that has become dischargeable due to depreciation of collateral;[3] in the consumer-credit context, reaffirmations are employed typically to revive in some form an original installment debt-payment schedule on which the debtor has defaulted. In this way, Section 524(c)(4)(B)(ii) serves as an alternative method to Section 722 by which repossession can be avoided. Of course, if Section 722 payments could be made by installment, no debtor would ever have reason to reaffirm under Section 524(c)(4)(B)(ii), since, by right, he could obtain under Section 722 the same end—continuing possession of his property—under the same terms—payment by installment—for what would often be a significantly lower price. Thus, installment payments under Section 722 would render useless Congress' carefully laid scheme for voluntary agreement under Section 524—clearly indicating that Congress had no intention to allow such payments under Section 722.

Even more persuasive is the practical consideration that, were installment payments allowed under Section 722, Congress' careful preservation of the rights of secured creditors in other sections of the Act would effectively be undermined. In Section 506 of the Act, Congress set the "allowed . . . secured claim" of a secured creditor at the value at disposition of his collateral, up to the amount of the outstanding debt, 11 U.S.C. § 506(a); by enacting Sections 725, which requires disposition of collateral for benefit of secured creditors prior to general distribution, 11 U.S.C. § 725, and 554, which allows early abandonment from the estate of rapidly depreciating collateral upon petition by the interested secured creditor, 11 U.S.C. § 554, Congress clearly sought to ensure the secured creditor the full value of his secured claim as of the date of bankruptcy filing.[4]

However, were "redemption" allowed by payment in installments of the redemption amount—particularly in cases where rapid depreciation of collateral were expected—the value of that otherwise safeguarded claim would be impaired. For instance, in our case, should defendant six months from now find herself unable to maintain the mandated payments of $100.00 per month,

**2.** Section 722 allows redemption on payment of the "allowed secured claim," defined in Section 506 as "the value of such creditor's interest in the estate's interest in . . . property [on which the creditor maintains his lien]." 11 U.S.C. § 506(a). The determination of that value is to be made "in light of the purpose of the valuation and of the proposed disposition or use of" the property. 11 U.S.C. § 506(a). Since the most likely use in most cases is sale for benefit of the creditor, *see* 11 U.S.C. § 725, the value generally approximates the then market value of the property.

**3.** Section 506 makes dischargeable that portion of a lien creditor's claim exceeding the value of the collateral. 11 U.S.C. § 506. *See* note 2, *supra.*

**4.** The legislative history of the Bankruptcy Reform Act of 1978 supports this conclusion. In explaining in general terms its provisions for secured creditors, the House report states that "[f]or the creditor, the bill requires that once the secured claim is determined, the court must insure that the holder of the claim is adequately protected. The secured creditor is entitled to realize his claim, and not have his collateral eroded by delay or use by the estate." H.R. Rep.No. 95–595, 95th Cong., 1st Sess. 181 (1977), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5963, 6141.

probabilities indicate plaintiff would repossess a Dodge that had depreciated far more than $600.00 from its current value—which even now is below the amount of debt outstanding on the original purchase price[5] —either by hard use, accident, or mere passage of time. Effectively, the allowance of installment payments in our case would partially destroy the security interest currently held by plaintiff and would thus undermine the congressional policy of protecting such interests exhibited in Sections 506, 554 and 725.[6]

In summary, both from the source out of which Congress drew Section 722 and from other provisions it enacted inconsistent with installment redemption payments, it seems clear that Congress intended redemption under Section 722 to be by lump sum payment only.

Accordingly, we reverse that portion of Judge Mahoney's order mandating redemption by installment payments and remand for further proceedings consistent with this opinion and order. We note, however, that should he judge it appropriate, Judge Mahoney should feel free to grant defendant a reasonable time to obtain outside financing of her redemption payment. SO ORDERED.

---

5.  Brief of Plaintiff-Appellant, 4.

6.  In fact, the Senate report reflected concern about "abuses such as may occur when the debtor deliberately allows the property to depreciate in value...." S.Rep.No. 95–989, 95th Cong., 2d Sess. 95 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5881. *See also* discussion, *supra* note 4.