In re Irwin SCHWEITZER and Linda Schweitzer, Debtors.

**CHRYSLER CREDIT CORPORATION, Plaintiff,**

v.

**Irwin SCHWEITZER, Defendant.**

**Bankruptcy No. 881–82847–20.**
**Adv. No. 882–0002–20.**

United States Bankruptcy Court,
E. D. New York,
at Westbury.

April 28, 1982.

861

Rood, Schwartz, Cohen & Ruderman, New York City, for plaintiff; David Tillem, of counsel.

William J. Burke, Port Jefferson, N. Y., for debtor.

ROBERT JOHN HALL, Bankruptcy Judge.

Chrysler Credit Corporation ("Chrysler") by a complaint filed 5 January 1982 prays for a judgment directing Irwin Schweitzer ("the debtor") to surrender his automobile in which Chrysler has a security interest unless the debtor either reaffirms the underlying obligation in accordance with section 524(c), 11 U.S.C. § 524(c) (Supp. IV 1980) or redeems the car pursuant to section 722 by a lump sum payment. The debtor, by way of counterclaim, asserts the right to redeem the car in installment payments.

The facts are not in dispute. On 20 August 1980, the debtor purchased, primarily for personal use, a 1980 Dodge Omni from S&W Sales Co., Inc. under a retail installment contract which provided for the $7665.79 purchase price to be paid in 48 monthly installments of $176.18 resulting in a total payment of principal and interest of $8456.64. Subsequently, the contract was assigned to Chrysler. Approximately one year later, on 25 August 1981, the debtor and his wife filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.*, and claimed the car as exempt. As of the filing date, the debtor's obligation under the installment contract had been reduced to $6528.66. The fair market value of the car, however, had depreciated to $5,000. Finally, as of the 28 January 1982 hearing date, neither had the debtor missed any of the car payments nor had any objections to the discharge of the debt been filed.

## I.

The debtor's position is that section 722[1] allows a debtor under Chapter 7 to redeem exempt[2] tangible personal property intended primarily for personal use from a lien securing a dischargeable consumer debt, *see* 11 U.S.C. §§ 101(7), 523(a), 727, by paying the holder of the lien the amount of its allowed secured claim, *i.e.*, its fair market value, *see id.* at § 506. Moreover, the debtor argues, inasmuch as the Code is silent as to the mechanics of redemption, a lump sum payment is not required. Rather, the debtor maintains, he may redeem the property from the lien by paying the lien holder its fair market value in any number of installments, subject to Court approval, that he elects. Accordingly, the debtor apparently proposes to simply continue his monthly payments of $176.18 until such time as the car's $5,000 fair market value has been repaid.[3]

Chrysler, of course, contests this and demands the $5,000 in cash if the debtor wishes to redeem the car.

Although the case law on this issue is split, the weight of authority has held that redemption must be by a lump sum payment. *In re Carroll*, 11 B.R. 725 (Bkrtcy. App. 9th Cir.), *rev'g.* 7 B.R. 907 (Bkrtcy.D. Ariz.1981); *In re Hart*, 7 B.C.D. 301, 8 B.R. 1020, 4 C.B.C.2d 648 (Bkrtcy.N.D.N.Y.1981);

*In re Whatley*, 16 B.R. 394 (Bkrtcy.N.D. Ohio 1982); *In re Cruseturner*, 8 B.R. 581, 587 (Bkrtcy.D.Utah 1981); *In re Zimmerman*, 4 B.R. 739 (Bkrtcy.S.D.Ca.1980); *In re Miller*, 4 B.R. 305 (Bkrtcy.E.D.Mich.1980); *In re Stewart*, 3 B.R. 24 (Bkrtcy.N.D.Ohio 1980). *See also In re Bell*, 8 B.R. 549 (Bkrtcy.E.D.Mich.1981) (*dictum*), *rev'd on other grounds*, 15 B.R. 859 (Bkrtcy.E.D. Mich.1981). Two bankruptcy court decisions have reached the contrary result. *In re Davis*, 15 B.R. 118, 8 B.C.D. 363, 5 C.B. C.2d 703 (Bkrtcy.C.D.Ill.1981); *In re Hall*, 11 B.R. 3 (Bkrtcy.W.D.Mo.1980).

Those courts which have allowed installment redemption have argued that the language of the Code and its legislative history leave considerable doubt as to Congress' intent vis-a-vis the mechanics of redemption which when coupled with the practical difficulties that the typical debtor will have in acquiring sufficient funds to effectuate a lump sum redemption compels the conclusion that debtors must be able to demand installment redemption lest the remedy be implicitly repealed by an unwarranted construction.

■ This Court rejects that argument.

Although one can find ambiguities in both the House and Senate Reports concerning section 722,[4] when read in conjunc-

---

1. Section 722 provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section; redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien. 11 U.S.C. § 722.

2. Alternatively, inasmuch as the estate possessed no equity in the car, any party in interest could have obtained the trustee's abandonment of the car again making it eligible for redemption. *See* 11 U.S.C. §§ 554, 722; *see, e.g., In re Stewart*, 3 B.R. 24 (Bkrtcy.N.D.Ohio 1980).

3. The Court has not been informed as to what enforcement rights Chrysler is to have under this proposed arrangement should there be a

default. Presumably, Chrysler would have the right to foreclose on its lien. However, inasmuch as the debtor is refusing to reaffirm any portion of the obligation, there apparently is no intention to re-establish personal liability. Nor is there any indication that the debtor envisions this arrangement as creating personal liability *de novo*. *Cf.* note 5 *infra*. Also, the debtor has failed to include an interest factor by which he would equate the periodic payments to present fair market value. *Cf. In re Zimmerman*, 4 B.R. 739 (Bkrtcy.S.D.Ca.1980); *In re Stewart*, 3 B.R. 24 (Bkrtcy.N.D.Ohio 1980).

4. Both the House and Senate Reports indicate that section 722 was based on yet "broader than" the rights of redemption granted a debtor under section 9–506 of the Uniform Commercial Code. H.R.Rep.No.595, 95th Cong. 1st Sess. 380 (1977), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5963, 6336; S.Rep.No.989, 95th Cong., 2d Sess. 95 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5881. Accordingly, the courts which have opted for in-

tion with the Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No.137, 93d Cong., 1st Sess. (1973) ("Commission Report"), Congress' vision of the mechanics of redemption becomes clear.

The Commission would have banned reaffirmations altogether as a creditor tool for subverting the fresh start policy of bankruptcy legislation in that they revitalized discharged debts. Commission Report, Part II at 142–43. The Commission realized, however, that providing the debtor with the right to redeem exempt or abandoned property from indefeasible liens by the payment in cash of its fair market value might well be an unobtainable and consequently empty remedy. *Id.*, Part I at 173–74 & n.42; Part II at 131. The Commission suggested, therefore, that the debtor be allowed, as a sort of exception to the reaffirmation ban, to "finance" the redemption by negotiating a binding agreement for periodic payments. *Id.*[5] The anticipated consensual nature of such an arrangement, however, is apparent from the Commission Report:

Thus, it is recommended that an *agreement* between the debtor and the secured party whereby the debtor *agrees* to pay the fair market value of the property be enforceable.

*Id.*, Part I at 174 (emphasis added). And again:

[A]*greement* will be reached by, first, *bargaining* to determine the fair market value of the liened property [or, if such is unfruitful, by a court determination of such] and, second, the creditor's *acceptance* of the debtor's *agreement* to make periodic payments . . . .

*Id.*, Part II at 131 (emphasis added).

Finally, there is nothing in the legislative history of the Code to indicate Congress' disapproval of these Commission proposals in any respect relevant to this discussion. *See In re Cruseturner*, 8 B.R. 581, 585–88 (Bkrtcy.D.Utah 1981). *Compare* Section 4–504, Commission Report, Part II at 130 *with* 11 U.S.C. §§ 524(c) and 722.[6]

---

stallment redemption have seized upon this language for support. *See, e.g., In re Carroll*, 7 B.R. 907, 909 (Bkrtcy.D.Ariz.), *rev'd*, 11 B.R. 725 (Bkrtcy.App. 9th Cir. 1981). Those courts, on the other hand, which have insisted on lump sum redemption have interpreted this "broader than" language only to refer to the fact that a debtor redeeming under section 722 need tender no more than the fair market value of the collateral while a redemption under section 9–506 of the Uniform Commercial Code requires a cash tender of the full obligation plus costs and possibly attorneys' fees notwithstanding the fact that these amounts may (and usually do) exceed the fair market value of the collateral. *See, e.g., In re Cruseturner*, 8 B.R. at 587–88; *compare* 11 U.S.C. § 722 *with* U.C.C. § 9–506.

Although unclear by itself, when the above Reports are read in conjunction with the Commission Report, *see* test *infra*, and the Code itself, *see* notes 6–8 *infra*, it becomes apparent that the latter interpretation is the proper one. *See In re Hart*, 8 B.R. 1020, 4 C.B.C.2d 648, 7 B.C.D. 301 (Bkrtcy.N.D.N.Y.1981).

5. The Commission apparently viewed such an agreement as creating a new personal liability as opposed to revitalizing a discharged debt. Commission Report, Part II at 143.

6. Section 524(c) provides:

An *agreement* between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is

dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

(2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;

(3) the provisions of subsection (d) of this section have been complied with; and

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as—

(A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor; or

(B)(i) entered into in good faith; and

(ii) in settlement of litigation under section 523 of this title, *or providing for redemption under section 722 of this title.*

11 U.S.C. § 524(c) (emphasis added). Moreover, section 524(c) agreements have uniformly been held to be consensual only. *See, e.g., In re Vinson*, 5 B.R. 32 (Bkrtcy.N.D.Ga.1980). Accordingly, one might ask, why did Congress feel it necessary to add the italicized provision if debtors were to have the right to dictate an installment redemption under section 722? Clearly, Congress must have anticipated that

■ Consequently, it cannot be said that this is an open question upon which Congress has failed to give guidance necessitating judicial intervention. Rather, it is an area in which Congress' wishes are clearly to be read in the Commission's Report and the Code itself.[7] Moreover, as has been shown, Congress was well aware that the typical debtor might well find lump sum redemption unavailable and therefore provided a mechanism for achieving an installment redemption, to wit, by consensual agreement. That this mechanism may be imperfect cannot be gainsaid; yea, it may well be short circuited by the recalcitrant creditor who refuses to come to terms.[8] But these deficiencies are more properly directed to Congressional review, and consequently, provide a poor excuse for judicial legislation.

Accordingly, the debtor's counterclaim for authorization to redeem in installments is denied.

## II.

Having ruled that a forced redemption requires a lump sum payment, the related yet more fundamental question remains: is the instant debtor so situated that he has need to resort to such a remedy? Or in other words, where as here a debtor has always been current in his contract payments, can the secured creditor demand that the debtor either redeem, reaffirm or surrender the collateral? Or may the debtor ignore his own filing, continue the then current contract payments and thereby maintain possession of the collateral?

■ Chrysler, relying on *In re Bell*, 15 B.R. 859 (Bkrtcy.E.D.Mich.1981), argues that Congress provided only two ways in

all installment redemptions would be by consensual agreement approved under section 524(c). *See also* note 7 *infra*.

7. *See* note 6 *supra*. It should also be noted that Chapter 13 of the Code allows a debtor to achieve the result sought here, to wit, an installment redemption over the secured party's objections (a so called "cram down"). *See* 11 U.S.C. § 1325(a)(5). However, the Code limits this right by providing that the installments cannot be spaced over more than three years without court approval and in no event over more than five years. *Id.* at § 1322(c). Moreover, the debtor's personal liability on the obligation is not discharged unless and until all the payments under the plan are completed. *Id.* at § 1328(a).

The Court, therefore, fails to see how it can be suggested that Congress envisioned installment redemption under section 722 when that section is devoid of any limiting parameters. Without the time constraints present in section 1322(c), why not redeem in 5 years, 10 years, 20 years? And should the Court hold up the debtor's discharge pending completion of the "plan"? That would apparently violate the spirit of Chapter 7, *see* Bankruptcy Rule 404(c); yet, once the debtor has his discharge in hand, how much incentive will he have to complete a long term redemption of an asset which may have depreciated to zero value? *Cf. In re Hart*, 8 B.R. 1020, 4 C.B.C.2d 648, 7 B.C.D. 301 (Bkrtcy.N.D.N.Y.1981) which suggested that such an arrangement might well be a deprivation of property without adequate protection, and consequently, without due process.

8. Particularly troublesome would be the situation, not present here, in which the debtor was willing to finance the redemption by reaffirming the original obligation, but where, for whatever reason, the secured party refuses, insisting instead on a cash redemption. In such a case, what the debtor would really be asking is that he be allowed, over the nondebtor party's objections, to assume the contract. However, while a trustee may, subject to statutory criteria, assume an executory contract or lease over such objections, *see* 11 U.S.C. § 365, a Chapter 7 debtor is not a trustee and a secured car loan is not an executory contract or lease, *In re Whatley*, 16 B.R. 394, 397 (Bkrtcy.N.D.Ohio 1982). *See also In re North American Dealer Group, Inc.*, 8 B.C.D. 940 (Bkrtcy.E.D.N.Y. 1982). Moreover, while a trustee also may hold off a secured creditor from foreclosing on his collateral when such property is necessary to an effective reorganization by providing such creditor with adequate protection, *id.* at §§ 361, 362(d)(2), again, a Chapter 7 liquidation is not a reorganization. Finally, when Congress decided to grant powers to Chapter 7 debtors, it had little trouble in explicitly enumerating them. *See, e.g., id.* at § 522(g) and (h). Accordingly, it must be concluded that Chapter 7 debtors have no right to assume their contracts, executory or otherwise, over the objections of the nondebtor parties. Ergo, they have no right to demand creditor acceptance of an offer of reaffirmation.

which a Chapter 7 debtor might retain liened property: by redemption or reaffirmation. Furthermore, Chrysler argues, it makes no difference whether the debtor is current in his contract payments. The filing triggers the rule: redeem, reaffirm or surrender the car.

The first problem with this analysis is that it finds no explicit support in the Code. Granted: the Code gives debtors the right to redeem certain assets. Granted: the Code gives debtors the right, subject to Court approval, to agree to reaffirm their debts. Nowhere, however, does the Court find that provision which says the filing of the petition divests debtors of the right to possess their exempt but liened assets absent the exercise of such remedial rights.

Moreover, this Congressional omission can hardly be called inadvertent when viewed against the Code as a whole.

For example, section 365(d)(1) provides that a Chapter 7 trustee must assume or reject an executory contract or lease within 60 days of the order for relief or it is deemed rejected. 11 U.S.C. § 365(d)(1). And section 365(d)(2) allows a Chapter 9, 11 or 13 trustee until the plan is confirmed to make a similar decision. *Id.* at § 365(d)(2). Accordingly, Congress' silence in regard to a time limit within which a debtor has to elect between redeeming, reaffirming or not acting at all militates against there being any such Code directive.

Finally, the existence of such a rule can hardly be implied from the existence of these remedies. Although one can ask: why have remedies such as redemption and reaffirmation unless debtors were obligated to surrender collateral absent their invocation? The simple answer is that such remedies are needed where the debt has been permissibly accelerated due to, for example, the debtor having defaulted on the contract payments.

■ Having so decided, however, other questions still remain: is not a redeem, reaffirm or surrender rule to be implied from the holding that a forced redemption must be by a lump sum payment? For, the

argument runs, is not the debtor's continual possession of the collateral, conditioned only on his maintaining his contract payment schedule notwithstanding his discharge and notwithstanding the secured party's lack of consent, nothing more than a forced and therefore impermissible installment redemption? To which the answer must be: in the absence of a specific Code provision, the rights and duties of the parties are to be determined, in the first instance, from their contract.

■ How much is owed; when is it due; who has the right to possession; what constitutes a default; how is it cured; what are the remedies? These are matters which, with due regard for law and rule, presumably have been agreed upon by and between the parties. Accordingly, the threshold inquiry must be: to what have the parties agreed? Then if it has been determined that the debtor's rights and duties under the contract are properly inconsistent with his continued possession conditioned only on his unconsented to maintenance of the payment schedule, it would follow that the debtor, if he wishes to maintain such possession, must avail himself of an appropriate Code remedy exercised in the appropriate manner. However, if no provision of the contract properly gives the secured party the right to possession of the collateral or to change the contract payment schedule then, under the circumstances of the case, the debtor's continued possession by means of such payments is hardly a forced installment redemption, but rather is simply the contracted for performance.

### III.

As indicated above, Chrysler is relying on the district court opinion in *In re Bell* to support its position. Although *Bell* clearly held that the debtor therein had to redeem, reaffirm or surrender his van notwithstanding the lack of any missed payments, the basis of the decision is unclear. On the one hand, the opinion can be read as being based on a perceived Code requirement compelling such debtor action. If that is

what *Bell* was saying, then for the reasons stated above, this Court declines to follow it. However, upon reading *Bell* in conjunction with the bankruptcy court opinion which it reversed, 8 B.R. 549 (Bkrtcy.E.D. Mich.1981), this Court is of the opinion that *Bell* was based on the bankruptcy termination clause contained in the contract.

In *Bell*, the contract had a standard "termination upon bankruptcy" clause. 15 B.R. at 861. Both the bankruptcy and district courts agreed that this clause was invalid vis-a-vis the trustee by virtue of section 541(c)(1) of the Code, and that consequently the right to possess the van passed to the estate. 15 B.R. at 861; 8 B.R. at 551. The debtors then exempted their equity in the van and the trustee abandoned the estate's interest.

It is at this point where the bankruptcy and district courts parted company.

The bankruptcy court was of the opinion that notwithstanding the departure of the van from the estate the bankruptcy termination clause was still inoperative. 8 B.R. at 551. The district court, without discussion, responded:

> Once the van was abandoned GMAC could seek to enforce its lien subject to the automatic stay provision, 11 U.S.C. § 362.
>
> GMAC held the primary possessory interest in the van.

15 B.R. at 861.

Therefore, what the district court was presumably saying was that although the bankruptcy termination clause was invalid vis-a-vis the trustee, upon his abandonment of the estate's interest in the van, the prohibition was removed and the clause, not being against public policy, was enforceable. Accordingly, inasmuch as the provision gives GMAC the right to possession, it is so entitled unless the debtor avails himself of an appropriate remedy, to wit: redemption or reaffirmation.

In fact, such an analysis was employed by the Bankruptcy Court for the Northern District of Ohio in *In re Whately*, 16 B.R. 394 (1982).

In *Whately*, the debtor, who had always been current on her car payments, argued that neither redemption nor reaffirmation was required inasmuch as her only default was predicated on a bankruptcy acceleration clause—which clause was expressly invalidated by section 363(e) of the Code. The *Whately* court rejected this argument by explicitly holding that a secured installment note is not an executory contract thereby rendering section 363(e) inapplicable, 16 B.R. at 398, and by implicitly finding the bankruptcy acceleration clause not to be against public policy and therefore enforceable, *see id.*

Finally, the only other decision this Court has discovered on point has indicated, in dictum, an inclination towards a contrary result. *See In re Abel*, 17 B.R. 424, 8 B.C.D. 798 (Bkrtcy.D.Md.1981).

In *Abel*, GMAC tried to establish that the debtor had defaulted in his car payments. When the bankruptcy court found otherwise, GMAC took an appeal in which it attempted for the first time to argue its right to relief from the section 362 stay notwithstanding the debtor having always been current in his payments.

The district judge refused to consider the argument inasmuch as it had not been raised below. However, the judge then stated:

> At a minimum, the request for relief from the stay appears to be premature. The relief proceedings do not confer any substantive rights upon the party seeking relief. They merely permit the secured party to pursue the remedies he would possess but for the stay. If GMAC were granted relief from the stay, it would not then be entitled to possession of the vehicle because Mr. Abel has fulfilled his obligations under the contract.

*Id.* 17 B.R. at 426, 8 B.C.D. at 799 n.3.

Although this of course supports the proposition that there is no Code provision requiring a Chapter 7 debtor to redeem, reaffirm or surrender his vehicle, it leaves undiscussed the ultimate issue: *is* a Chapter 7 debtor fulfilling his obligations under his contract by maintaining the contract pay-

ment schedule notwithstanding the commencement of those proceedings by which this very obligation will soon be extinguished and notwithstanding those unwaived contract provisions which essentially prohibit such a course of conduct based on that reality? [9]

For example, in the case at bar, the contract provides:

[Chrysler] may demand payment of all the money due [it] under this contract and take the car, even if [Chrysler] must come onto [the debtor's] property to do so if:

a. [the debtor does] not pay any payment when it is due; or . . .

e. [the debtor files] bankruptcy or someone else files bankruptcy against [him]. . . .

The determinative issue is therefore: is this provision enforceable?

### IV.

Although subject to a liberal construction in favor of debtors in order to avoid inequitable results, *see In re Triangle Laboratories, Inc.*, 663 F.2d 463 (3d Cir. 1981); *In re Queens Boulevard Wine & Liquor Corp.*, 503 F.2d 202 (2d Cir. 1974), bankruptcy termination clauses were specifically condoned by the former Act, at least as to leases, *see* section 70(b), 11 U.S.C. § 110(b) (repealed 1978); H.R.Rep.No.595, 95th Cong., 1st Sess. 348 (1977), *reprinted in* [1978] U.S. Code Cong. & Ad.News 5963, 6304, ("House Report"). In order to simplify the question of what assets were to be subject to administration, the Commission recommended rendering such provisions "unenforceable as to property of the estate." Commission Report, Part I at 193. Moreover, the Commission suggested making such provisions invalid in executory contracts and leases, at least in reorganization cases. *Id.* at 198.

Eventually, these suggestions were embodied in sections 363(c)(1), 365(b)(2), (e), (f)(3) and 541(c) of the Code. The later

legislative history to section 365, however, makes it clear that not all bankruptcy termination clauses are invalid in toto. For example:

[Section 365(e) does not limit the application of an ipso facto or bankruptcy clause to a new insolvency or receivership after the bankruptcy case is closed. That is, the clause is not invalidated in toto, but merely made inapplicable during the case for the purposes of disposition of the executory contract or unexpired lease.

House Report at 349, U.S.Code Cong. & Ad.News at 6305.

■ Accordingly, where as here the asset is no longer part of the bankruptcy estate, it follows that the section 541(c) prohibition against such bankruptcy termination clauses is no longer operative. Ergo, in the absence of a specific Code prohibition, unless such clauses can be said to be offensive to the underlying goals and purposes of the Code (*i.e.* against public policy), they must be enforced.

Although not directly on point, the Court finds those cases decided under old section 70(b) to be instructive. There, when faced with statutorily condoned termination clauses, the courts upheld them, but only in the absence of the landlord's waiver of such a provision or the creation of an inequitable result. *In re Queens Boulevard Wine & Liquor Corp.*, 503 F.2d 202, 206–07 (2d Cir. 1974). Accordingly, enforcement decisions were rendered on a case by case basis. Moreover, when examining the equities of a particular case, the courts gave particular weight to such factors as whether enforcement of the provision would result in "depriving the debtor of an asset absolutely necessary to its continued viability." *Id.* at 207.

■ Applying the foregoing to the case at bar, the Court notes that the contract provision which accelerated the debt upon the filing of the petition in reality did no more, at least in regard to the outstanding principal, than what the Code does auto-

---

**9.** It should be noted that the *Abel* opinion fails to disclose whether the contract contained a bankruptcy termination clause. However, in

the Court's experience, such clauses invariably exist.

matically. In other words, inasmuch as "bankruptcy operates as the acceleration of the principal amount of all claims against the debtor," House Report at 353, U.S.Code Cong. & Ad.News at 6309, one can hardly brand the clause as against public policy.

Furthermore, when one balances the secured creditors loss of the debtor's personal liability on the obligation and the depreciating value of the lien against the reality that enforcing the provision will not necessarily deprive the debtor of his vehicle, the remedies of redemption and reaffirmation being available, the scales are tipped toward enforcement.

That is not to say, however, that the Court will automatically enforce these types of clauses in all cases. For example, should the vehicle be necessary for the debtor's survival and the secured creditor unreasonably refuses to agree to a reaffirmation of the debt, the Court may well decline enforcement of such a bankruptcy acceleration clause based on equitable considerations.

Such facts and issues not being before the Court at this time, the Court finds the acceleration provision enforceable, and therefore, the debtor in default. Accordingly, the debtor is granted until the date of his discharge hearing to either redeem the car by the tender of $5,000 or negotiate a reaffirmation. The debtor is granted leave, however, to move in conformity with this opinion, should Chrysler unreasonably refuse to cooperate with the debtor's exercise of these Code granted remedies.

Settle Judgment.