SHADUR, District Judge,
dissenting:
There are two respects in which my analysis diverges from that of my colleagues. First and most fundamentally, I believe that the most basic jurisprudential principles teach that the case now before us is not only moot but — somewhat astonishingly — was moot even before the Bankruptcy Court rendered its decision. Second, if that problem were not present, so that we were in a position to reach the merits, I believe that the unambiguous language of Section 521(2) renders it inappropriate for this Court to fashion a “reinstatement” remedy for debtors in Boo-drow’s position. Hence I am constrained to dissent with all respect.

Mootness

However tempting it might be to address the important substantive issue set out by the parties on this appeal, it will be time enough to do so when a live controversy posing that issue reaches this Court, as it has reached the several other Courts of Appeals that have weighed in on the subject. But here the fatal defect is that Article III, Section 2 of the United States Constitution extends the “judicial Power” of this and all other federal courts only to the resolution of actual “Cases” and “Controversies.” As a matter of constitutional law, the Supreme Court has consistently announced that a federal court “may only adjudicate actual, ongo *201 ing controversies” (Honig v. Doe, 484 U.S. 305, 317, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988)). When a case becomes moot we must dismiss it, for federal courts lack subject matter jurisdiction over, a moot action (Fox v. Board of Trustees, 42 F.3d 135, 140 (2d Cir.1994)). And this is true “even if the ease was live at the outset but later events rendered it moot on appeal” (New York City Employees’ Retirement Sys. v. Dole Food Co., 969 F.2d 1430, 1433 (2d Cir.1992)). A fortiori, then, the same principle operates when any dispute, though live when an action or motion was first filed, has been rendered moot even before it was decided by the court of first resort.
By operation of 11 U.S.C. § 362(a),[1] debtor Brian Boodrow (“Boodrow”) and the property of his estate were protected by the automatic stay immediately upon Boodrow’s filing of his Chapter 7 petition. Hence the July 5, 1995 “Motion for Relief From Automatic Stay” filed by Capital Communications Federal Credit Union (“Capital”) unquestionably presented a live dispute to the Bankruptcy Court when it was first tendered. At that time the automatic stay imposed a direct .barrier against any state law remedy (such as foreclosure) that Capital might have sought to exercise to enforce its security interest in Boodrow’s vehicle.
But just as certainly the Bankruptcy Court’s September 5, 1995 order that discharged Boodrow from bankruptcy made Capital’s petition for relief from that stay a moot request. Under Section 362(e)(2)(C) the Bankruptcy Court’s discharge order terminated the automatic stay by operation of law. Thus as of September 5 Capital’s motion for relief from stay had become a legal nullity. Capital “lack[ed] a legally cognizable interest in the outcome” of its motion (County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)), for the stay from which Capital had initially sought relief no longer existed (In re Ames, 973 F.2d 849, 852 (10th Cir.1992); Olive St. Inv., Inc. v. Howard Sav. Bank, 972 F.2d 214, 216 (8th Cir.1992)(per curiam); and cases cited in both of those opinions).
That being the case, the absence of a live dispute should have foreclosed the entry of the Bankruptcy Court’s December 27, 1995 order denying relief from stay — the order now sought to be reviewed on this appeal.[2] And in my view such absence of a live controversy even before the Bankruptcy Court ruled, and the absence of a live controversy today, incontrovertibly call for the dismissal of this appeal.
My colleagues’ suggestion that Capital might have standing due to the continuing existence -of the automatic stay as to what might be “estate property” is troubling. Not only is that hypothetical posture for this appeal not supported by the record; but the past and present posture of Boodrow’s automobile is simply inconsistent with any notion that the car is held as property of the estate. “Chapter 7 debtors have no right to use, sell, or lease nonexempt property of the estate” (1 Robert E. Ginsberg & Robert D. Martin, Ginsberg & Martin on Bankruptcy (“Ginsberg & Martin”) § 5.05[A], at 5-42 (4th ed. Supp.1997)), yet Boodrow has had possession and use of the automobile for over two years — since the very inception of the bankruptcy estate in May 1995. Post-discharge property of a Chapter 7 estate (to which the automatic stay might continue to apply) is property in the possession of the bankruptcy *202 trustee and not the debtor (1 Ginsberg & Martin § 3.07[F], at 3-84[3]). And it is the trustee and not the debtor that has the corresponding standing to protect property of the estate. But here the trustee has been conspicuously absent from every stage of this litigation — no interest has ever been asserted on behalf of the estate.
Indeed, although each of the litigants (and amici curiae) has set forth an asserted reason why this Court might still entertain this appeal, it is plain that none of them holds out the belief that Boodrow’s automobile is still subject to the protection of the automatic stay. Instead the record is replete with representations that the stay from which Capital sought relief terminated upon Boodrow’s September 5, 1995 discharge. For example, in his response brief Boodrow says:
[Boodrow] received his discharge on September 5, 1995. The stay therefore was terminated per 11 U.S.C. § 362(c)(2)(c). If there was a default [Capital] would be entitled to proceed to enforce its rights in State Court. [Capital] presents and argues an intellectually challénging issue which for all practical purposes is moot at this point in time in this bankruptcy ease.
Capital — though it now argues (after we compelled it to face up to the mootness question) that this case presents an exception to the mootness doctrine of “capable of repetition, yet evading review” — has similarly confirmed that Boodrow’s discharge terminated the automatic stay at issue:
In the case at bar, [Capital] filed a motion to lift the automatic stay under Bankruptcy Code Section 362 on the ground that the debtor failed to reaffirm, redeem or surrender the collateral in accordance with Bankruptcy Code 521. This case is exactly the type of situation in which once the motion was denied, a discharge would be issued and the question normally moot.
Finally, amicus Key Bank of New York (“Key Bank”) also admits in its supplemental brief that “the stay has been vacated and a discharge granted.”
It must be remembered that Capital sought to enforce Section 521(2)’s-notice provision by asking only for relief from the automatic stay, rather than through a motion to dismiss or a motion to compel the debtor to exercise one of the options set out in Section 521(2)(A), as was done in such cases as In re Johnson, 89 F.3d 249 (5th Cir.1996)(per curiam), In re Taylor, 3 F.3d 1512 (11th Cir.1993) and In re Belanger, 962 F.2d 345 (4th Cir.1992).[4] To be sure, as In re Weir, 173 B.R. 682, 690 (Bankr.E.D.Cal.1994) explains, relief from stay is often of little practical utility to a creditor in the absence of the debtor’s default:
The problem with relief from stay firom the creditor’s standpoint is that relief merely permits the creditor to enforce its rights under state law. If the debtor is in default, the creditor must follow the procedures established by state law for enforcing its rights in the collateral. Where, however, there is no default, the state law hurdle becomes insurmountable.
But that strategic decision as to Capital’s line of attack was a matter left to the sound discretion of its counsel.[5]
*203 What is clear instead is that relief from the stay is the only claim stated in Capital’s July 5, 1995 motion, the only relief considered by the Bankruptcy Court (192 B.R. 57, 60 (Bankr.N.D.N.Y.1995))" and indeed the only relief sought by Capital on this appeal (Capital Br. 24). Courts are always confronted with records that have been shaped by the. litigants. And because the record thus shaped on this appeal- — like the record before the Bankruptcy Court and then before the District Court at the time that each of them acted — does not present a “Case” or “Controversy,” I submit that we are constrained by the Constitution to eschew a. decision on the merits.
It is, I suggest, equally inappropriate for us to reformulate Capital’s own claim on a post hoc basis so that we may now announce a decision on the merits of the underlying legal issue. Indeed, the prevailing judicial cleavage as to precisely how Section 521(2) is to be read and enforced makes reticence by this Court on a question posed on a purely hypothetical basis particularly apt (Lowry Fed. Credit Union v. West, 882 F.2d 1543, 1546 (10th Cir.1989); Weir, 173 B.R. at 690-93). For if Capital had sought a remedy other than relief from the stay, we would now be dealing with a significantly different record — involving the (almost certainly contested) application of altogether different provisions of the Bankruptcy Code (Weir, id).[6]
Finally, the suggestion made by Capital, Boodrow and Key Bank (the only response that the parties litigant, unlike the panel opinion, have proffered to counter the problem of mootness) that we should nevertheless reach the merits because the issue presented on this appeal is one “capable of repetition, yet evading review” vanishes on analysis. That exception to the mootness doctrine, first announced by the Supreme Court in Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), “applies only in exceptional situations” (City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983)) where (Haley v. Pataki, 60 F.3d 137, 141 (2d Cir.1995), quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975)):
(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again.
And the actual judicial experience in dealing with the precise substantive question that is sought to be posed by this case demonstrates the failure of the claim before us to satisfy the first of those criteria.[7]
*204 That “evading review” argument is really torpedoed by each of the decided eases in other jurisdictions construing Section 521(2). As already indicated, each of the case.s in other Circuits — cases such as Johnson, Taylor and Belanger — dealt with a wholly live controversy stemming from the denial of a creditor’s motion to compel a debtor to exercise one of the options given by Section 521(2)(A). In like fashion, nothing prevents the same legal issue that the present parties have tendered in a purely hypothetical matrix from coming before a Bankruptcy Court and District Court in this Circuit, and hence before this Court, in an active “Case” or “Controversy” posture. Only Capital’s strategic decision to fashion its requested reme,dy solely in terms of relief from the stay distinguishes this action from those properly reviewed in other Circuits.
And even if we were to put so fine a point on Capital’s claim as to evaluate whether the propriety of its requested remedy (relief from stay) for a claimed violation of Section 521(2) evades review, Capital’s position would still fail. For although the Bankruptcy Court found that the average lifespan of a Chapter 7 suit is 4.8 months (192 B.R. at 60), by definition that reference to an “average time” indicates the existence of cases involving longer periods. Data from the Administrative Office of the United States Courts demonstrate that over 39,000 Chapter 7 eases were closed in statistical years 1991 and 1992 with lifespans of greater than 2 years (Report to Chairman, Subcomm. on Econ. & Commercial Law, Comm, on the Judiciary, House of Representatives, from the U.S. General Accounting Office, July 13, 1994, App. V, reprinted at 1994 WL 810651). Nothing in the record before the Bankruptcy Court (and therefore before us) provides any reason to believe that the issue now before us was not posed by, and fully reviewable in, any number of those cases (and will not become fully reviewable in any number of similar future cases). Indeed, at least one reported decision (Riggs Nat’l Bank v. Perry, 729 F.2d 982, 986 (4th Cir.1984)) has directly considered (without deciding) whether relief from the automatic stay was even an appropriate remedy for a debtor’s failure to comply with Section 521(2)’s statement of intention. That decision, I believe, further confirms that Capital’s claim is not one that “evades review” — instead, just such a claim may appropriately be dealt with as and when a case arises that has not been mooted, as this one was at its very inception.
In sum, I believe that the Bankruptcy Court’s September 5,1995 discharge order— which terminated the automatic stay at issue in this case as a matter of law under Section 362(e)(2)(C) — necessarily rendered moot Capital’s earlier motion for relief from that stay. We are limited by the powers delegated to us by Article III, and for that reason we simply lack jurisdiction to adjudicate such a moot action. Consequently I submit that this appeal should be dismissed.

The Merits

As a matter of pure logic, what I have said to this point ought to prevent me from going on to the merits of the proper reading and application of Section 521(2). But because I also depart from the panel’s treatment of those subjects, in the interest of full disclosure I believe that I should explain my dissent on that score as well.
My colleagues, finding particularly persuasive the Fourth Circuit’s decision in Belan-ger, deem the language of Section 521(2) to be ambiguous. And having so found, they embark on a rather extensive review of which interpretation of Section 521(2) best comports with the general “fresh start” policy of the Bankruptcy Code. When they determine that limiting Boodrow’s options to the three articulated possibilities of Section 521(2)(A) might “severely interfere” with his opportunity for a fresh start, my colleagues read the statute as providing a debtor with a so-called “fourth option” of retaining secured collateral and keeping current on the debt- or’s installment loan payments.
In my view, however, that decision is for Congress to make — not one for judicial legislation — and Congress has spoken plainly indeed in Section 521(2). As identified by my colleagues, the pertinent portion of Section 521(2)(A) provides (emphasis added):
the debtor shall file with the clerk a statement of his intentions with respect to the *205 retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.
In that respect, I believe that all but one of the Courts of Appeals that have examined the matter — the Fifth Circuit (Johnson, 89 F.3d at 252), the Seventh Circuit (In re Edwards, 901 F.2d 1383, 1385-87 (7th Cir.1990)), the Tenth Circuit (Lowry, 882 F.2d at 1545) and the Eleventh Circuit (Taylor, 3 F.3d at 1516) have properly read the plain language of that section in a totally different way from Belanger and the panel opinion here. ■
As stated in Taylor, id. (most citations omitted, emphasis in original):
The Taylors urge us to adopt the Fourth Circuit’s holding in In re Belanger, 962 F.2d 345 (4th Cir.1992), which permits a debtor to retain his or her property and keep current on his or her obligation under the existing contract. They also rely on several bankruptcy opinions from this circuit. Most of these courts focused upon the phrase “if applicable” and reasoned that if a debtor wishes to retain secured property but does not want to redeem or reaffirm, then those options are not “applicable.” This reasoning does not comport with the plain language of section 521 which states that “the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property, and if applicable.... ” Referring to the language preceding the phrase “if applicable,” it is clear when the options of redemption and reaffirmation would not be applicable. This language does not apply to a debtor’s surrender of the property; it therefore must apply to a debtor’s retention of property. If a debtor retains secured property, thén the options of redemption and reaffirmation are applicable and the debtor is required to redeem or reaffirm.
And though the Tenth Circuit in Lowry, 882 F.2d at 1545-46 found difficulties posed by the absence of a stated enforcement mechanism for Section 521(2), the court there expressed its conclusion as to the unambiguous language of that section even more forcefully (id. at 1545):
The creditor argues that the requirements of § 521(2) are mandatory. That is obvious. There is no room within the direct language of the section to présume otherwise.’
Lowry, id. at 1545 n. 2 continued:
To escape the mandatory language of the section, debtors argue the “if applicable” phrase gives a debtor some form of option. We are unpersuaded by that argument because it is inconsistent with the plain meaning of the statute. The words “if applicable” are gratuitous and do not affect the mandatory duties prescribed by the statute.' The plain English of the section requires every debtor in possession of collateral to make an election whether to retain or relinquish that property. If the debtor decides to retain, the debtor is required to elect whether to redeem or reaffirm. The section also requires the choice be effected within 45 days no matter whether the decision is to retain or relinquish. No other meaning can be gained from the precise terms of the statute, and nothing suggests the debtor can simply elect to retain the property and ignore the other duties required by § 521(2).
To support a different reading of the statute as somehow ambiguous, my colleagues look to the Fourth Circuit’s decision in Belanger, 962 F.2d at 348, which had a different take on the phrase “if applicable” in Section 521(2):
The phrase “if applicable” is redundant if, contrary to [what is now 4 Lawrence P. King, Collier on Bankruptcy § 521.10[2], at 521-34 to -35 (15th ed. rev.1997) ] and the district court, the options given to the debtor are considered to be exclusive. If this were so, § 521(2)(A) would have simply provided: “and specifying that such property is claimed as exempt, that the debtor intends to redeem such, or that the debtor intends to reaffirm debts secured by such property.” The fact that the statutory options are stated in the disjunctive shows that the words “if applicable” are unnecessary under a construction of the *206 statute that makes the options exclusive. But if the phrase “if applicable” is given effect, it plays an important role. As Collier points out, the debtor must specify a choice of the options if applicable. But if these options are not applicable, the debtor need not specify them.
But like all of the other Courts of Appeals except for the Fourth Circuit, I consider that such a reading of the “if applicable” phrase— to connote the existence of an unexpressed “fourth option”- — demands an inordinately awkward use of the statutory language. That construction reads the statute both (1) as though Congress had said that the statutorily identified options of exemption, redemption, or reaffirmation would be the only ones available solely if the debtor decides that one of those “is applicable” (something that Congress certainly did not say) and (2) as though Congress had also said (as it also certainly did not) that some alternative other than those three choices was available if the debtor decided on such other alternative. By contrast, it is perfectly conventional usage— and perfectly good English — for someone to employ the “if applicable” language in the statute as a shorthand way of calling for a choice between A and B and, only if B “is applicable,” then a further choice among subsets of B.
Further, as my colleagues recognize, limiting a debtor to one of those three expressly stated options is most consistent with the language of the very next subpart of Section 521(2), Section 521(2)(B). That subsection provides (emphasis added):
within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph.
As recognized in such cases as Taylor, 3 F.3d at 1516, that obligation of a debtor to “perform his intention” within 45 days after filing the notice of intent is totally at odds with any concept of Congress having contemplated a “fourth option” involving a continued and extended payout schedule that would run the length of the underlying consumer debt contract — a period of many months (or years) in most cases. And my colleagues’ position that the bankruptcy court’s discretion to extend that 45-day period “for cause” might equate with a permissible period of performance extending over several years really fabricates that “fourth option” out of whole cloth, particularly when no other language in the Bankruptcy Code would support such a result.[8]
Finally, I submit that limiting a Chapter 7 debtor to the three options expressly articulated in Section 521(2)(A) is perfectly consistent with the qualifying language of Section 521(2)(C), which provides:
nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor’s or the trustee’s rights with regard to such property under this title.
My colleagues cite to one bankruptcy court decision predating the enactment of Section 521(2) that held that a debtor not in default might retain collateral so long as that debtor remained current on the pre-bankruptcy loan. From that decision, my colleagues reason that strictly limiting a debtor to the three alternatives listed in Section 521(2)(A) would impermissibly alter the law — in plain contravention, they suggest, of Section 521(2)(C).
But limiting a Chapter 7 debtor to the three congressionally stated options of Section 521(2)(A) involves no substantive change to the Bankruptcy Code. Initially, it is surely worth mention that the state of the law be *207 fore the effective date of Section 521(2) was far from settled. Indeed, before 1984 there was no shortage of authority for the proposition that a Chapter 7 debtor had no right to continue performance (absent creditor-approved reaffirmation) under a secured consumer debt contract (see, e.g., In re Bell, 700 F.2d 1053, 1055-57 (6th Cir.1983); In re Schweitzer, 19 B.R. 860, 864 n. 8 (Bankr.E.D.N.Y.1982); In re Whatley, 16 B.R. 394, 397 (Bankr.N.D.Ohio 1982)).
But far more significant, I submit, is the total absence from the Bankruptcy Code of any provision that would expressly permit the “fourth option” now recognized by my colleagues. Any practitioner possessing even a modicum of familiarity with bankruptcy proceedings knows that this so-called “fourth option” would be by far the most advantageous option for many Chapter 7 debtors, who, though insolvent, file for bankruptcy while they are current on their secured consumer loans. For unlike a Section 722 redemption, the debtor need not raise funds sufficient to pay the full “amount of the allowed secured claim” in one lump-sum payment. And unlike a Section 524(c) reaffirmation, the debtor need not negotiate with creditors — from a disadvantaged bargaining-power position — while facing the likely prospect of having to reaffirm otherwise dis-chargeable debt. Rather, the “fourth option,” if it were to be judicially created, would “give[] the debtor not a ‘fresh start’ but a ‘head start’ since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender’s collateral” (Taylor, 3 F.3d at 1516). That option allows the debtor to strip from his or her obligation any debt that would in future turn out not to be fully secured by the value of the creditor’s collateral, while at the same time avoiding any risk of future personal liability.[9]
Yet despite the clear surface attractiveness of that prospect to innumerable Chapter 7 debtors, Congress has simply not seen fit to insert (or even to recognize) such a “reinstatement” option in the Code — whether by a separate explicit provision (as it has in the cases of Section 722 for redemption and Section 524(c) for reaffirmation), or even by reference in the text of Section 521(2)(A). As the Supreme Court’s June 16, 1997 decision in Associates Commercial Corp. v. Rash, — U.S.-, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) confirms, when Congress wants to provide for a “cram down” that enables a debtor to keep property over the objection of a secured creditor, it knows full well how to do so. Associates Commercial, id. at-- -, 117 S.Ct. at 1882-83 (footnote omitted) details just how Congress accomplished that result in Chapter 13 of the Code:
To qualify for confirmation under Chapter 13, the Rashes’ plan had to satisfy the requirements set forth in § 1325(a) of the Code. The Rashes’ treatment of ACC’s secured claim, in particular, is governed by subsection (a)(5). Under this provision, a plan’s proposed treatment of secured claims can be confirmed if one of three conditions is satisfied: the secured creditor accepts the plan, see 11 U.S.C. § 1325(a)(5)(A); the debtor surrenders the property securing the claim to the creditor, see § 1325(a)(5)(C); or the debtor invokes the so-called “cram down” power, see § 1325(a)(5)(B). Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)®, and the debt- or is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral, see § 1325(a)(5)(B)(ii).
In this instance we are being asked to imply a similar “cram down” provision into Chapter 7 as a matter of judicial legislation, even though the Constitution’s designated legislator — Congress—has not chosen to do so, as it has expressly elected to do in Chap *208 ter 13. As a matter of statutory construction (over and above the clear-language argument that I have already made), I believe that the strong negative implication from Congress’ omission of the “fourth option” from Section 521(2)(A) is obvious (Bell, 700 F.2d at 1057 made exactly that point before Section 521(2) was enacted, further buttressing the negative inference from Congress’ silence).
And further in that regard, the Supreme Court’s identification in Associates Commercial, — U.S. at-, 117 S.Ct. at 1885 of the risks that are placed on a secured creditor by a debtor’s retention of property (a motor vehicle in that case, just as in ours) applies with equal force to suggest further that we should not create a debtor-favored remedy where Congress has not done so explicitly. Ultimately, even if the language of Section 521(2)(A) were to be viewed as ambiguous on this point (as my colleagues suggest), the Supreme Court’s teaching in Dewsnup v. Timm, 502 U.S. 410, 419-20, 112 S.Ct. 773, 779-80, 116 L.Ed.2d 903 (1992) dictates that this Court should not create such a broad new remedy for Chapter 7 debtors in the absence of some congressional signal that the judiciary should do so:
Of course, where the language is unambiguous, silence in the legislative history cannot be controlling. But, given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become “unsecured” for purposes of § 506(a) without the new remedy’s being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles.
In sum, even if we were somehow able to overcome the mootness hurdle to proceed with the merits, I believe that the power simply does not lie in this Court to devise a new Chapter 7 remedy where Congress has opted not to act. For this reason too I part company with my colleagues.
As stated at the outset, I respectfully dissent.

. All further references to provisions of the Bankruptcy Code will take the form "Section — ,” omitting the repetition of "11 U.S.C."

. Nothing in the record explains why the Bankruptcy Court, having discharged Boodrow and thus having extinguished the stay as a matter of law, nonetheless went on to decide the legal question as to how Section 521(2) should be construed. It is to' be sure an interesting as well as an important issue, but the Bankruptcy Court (like this Court) is obligated by Article III to avoid academic questions. Relatedly it is surely significant that appellant Capital’s opening brief said nothing at all on the subject — a critical jurisdictional issue — until its very last page, when the Conclusion included the unexplained and totally unsupported parenthetical statement “(which stay is still effective).” It was only when we inquired on the subject that both Capital and Boodrow acknowledged that such was not the case (something that the panel opinion does not acknowledge) — and that it had not been the case even when the Bankruptcy Court ruled.

. By contrast, such property may be in the hands of a Chapter 11 debtor in possession or a Chapter 12 or Chapter 13 debtor (id.). That distinction is meaningful and substantive, stemming from the conceptual differences among the types of protection afforded by the different types of bankruptcy proceedings and the correlative differences in the rights of the parties in interest.

. It is also troublesome to find references in the panel opinion to Capital’s seeking relief from the stay "among other things” and to its motion “to lift the automatic stay and for other relief.” Like every other litigant’s prayer for relief except in cases seeking a judgment for damages, Capital’s petition included a staple boilerplate reference to "such other and further relief as to the Court deems just and proper." But both of the litigants, both courts below and all of the amici curiae have properly viewed Capital as asking only for vacation of the stay, relief that would be total in bankruptcy terms (as pointed out in n. 5, the enforcement of Capital’s rights once the impediment of the stay was removed is solely a state law matter assertable in- the state court system, not in a bankruptcy proceeding).

.My colleagues’ suggestion that the "essential relief” sought by Capital in its motion before the bankruptcy court was a federal court order forcing Boodrow immediately either to pay the loan balance, surrender the vehicle or reaffirm the *203 debt not only rewrites Capital's own motion but appears to misunderstand the very purpose of Capital's motion for relief from the automatic stay. "The effect of lifting the automatic stay is only to allow [the creditor] to pursue its remedies under state law....” (MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc., 882 F.2d 615, 618 (2d Cir.1989)). That is, Capital simply petitioned the bankruptcy court for leave to pursue any available state law remedies that it might have against Boodrow. Despite that, my colleagues— otherwise faced with the absence of a live controversy — hypothesize that Capital might perhaps now be allowed some relief much different from (and far beyond) that ever sought by Capital itself (see note 4). Mootness is not eliminated by reference to an amorphous possibility that has not been advanced by the litigants themselves, but is suggested only in the panel opinion.

. My colleagues suggest that this case is not moot- because, if we were to reverse, we could remand to the bankruptcy court with orders either to compel Boodrow to make an appropriate Section 521(2) election or to amend Boodrow’s discharge. That is an odd suggestion, for what is noticeably missing from that hypothetical statement of possible relief is any mention of the automatic stay. Indeed, such an' order would place this Court in the position of granting relief to Capital entirely different from what Capital itself had chosen to request throughout this litigation — -up to and including its prayer for relief on this appeal. To rest that possibility on Capital’s generic prayer for "such other and further relief as the Court deems just and proper” in its original motion for relief from stay (see n. 4) is, I believe, both inappropriate and prone to substantial future abuse — particular where (as here) none of the parties and neither of the lower courts contemplated (much less addressed) such alternative relief.

. Even-though the second criterion might also not be met here, I am assuming arguendo for purposes of this discussion that Capital (as a secured lender) might reasonably be expected to face the same problem with some borrower other than Boodrow in the future.

. Additionally, my colleagues’ suggestion that a debtor's "reinstatement” option might be performed pursuant to Section 521(2)(B) over a period of years is inconsistent with the Bankruptcy Court’s handling of this very case. Boodrow’s May 1995 Section 521(2) statement of intention indicated that he intended to retain the vehicle and reaffirm his debt to Capital, yet (after a change of circumstances) Boodrow later determined not to reaffirm his debt and merely to remain current on his monthly payments. No supplemental statement of intention was filed stating that intent, nor did the Bankruptcy Court make a finding of "cause” for breach of the Section 521 (2)(B) 45-day period or "fix” an additional period of time for performance (as required by that section).

. It is scarcely necessary to observe that the volatility of the market for used consumer goods, automobiles representing a good example, is such that the first-time imposition of that unbar-gained-for risk on a secured lender such as Capital is extraordinarily unfair. And any judicial creation of that risk for all future cases, by the inexorable operation of the Coase Theorem, will drive the cost of obtaining credit upward. Whose interests does that serve?