KRUPANSKY, Circuit Judge.
 

 This action joins the legal issue of whether redemption of secured collateral in a Chapter 7 bankruptcy proceeding may be achieved through installment payments.
 

 Debtors, Thomas and Louise Bell (Bells), were parties to a purchase money security agreement with General Motors Acceptance Corporation (GMAC) covering a 1978 Chevrolet Van. The agreement contemplated that the Bells would pay the balance of the purchase price, approximately $6,000 together with financing charges, in equal monthly installments. At the time debtors filed a joint petition in Bankruptcy on March 28, 1980, under Chapter 7 of the Bankruptcy Reform Act of 1978 (Bankruptcy Act), 11 U.S.C. § 701
 
 et seq.,
 
 the fair market value of the Van exceeded the outstanding balance on the agreement by approximately $1,000, the debtors had tendered all monthly installments on their obligation to GMAC and had otherwise not defaulted upon any term of the contract.
 
 [1]
 
 The Van became property of the estate subsequent to which the debtors exempted their equity and the trustee abandoned the estate’s interest. GMAC filed a complaint to reclaim the Van and debtors counterclaimed seeking authorization from the bankruptcy court to retain possession of the Van upon continued payment of monthly installments. The Bankruptcy Court permitted installment redemption,
 
 In re Bell,
 
 8 B.R. 549 (Bkrtcy.E.D.Mich.1981), and the District Court reversed,
 
 In re Bell,
 
 15 B.R. 859, 7 B.C.D. 219 (E.D.Mich.1981).
 

 The Bankruptcy Reform Act of 1978 authorizes a Chapter 7 debtor to redeem certain secured property:
 
 *1055
 
 11 U.S.C. § 722.
 
 [2]
 
 This provision generally permits a debtor to redeem tangible secured personal property by paying the creditor the approximate fair market value of said property, or the amount of the claim, whichever is less.
 
 See In re Zimmerman,
 
 4 B.R. 739 (Bkrtcy.S.D.Calif.1980);
 
 In re Hart,
 
 8 B.R. 1020 (N.D.N.Y.1981).
 
 [3]
 
 However, § 722 is facially silent as to the mechanics of redemption and, particularly, on whether the redemption may be accomplished through installment payments. The weight of authority has denied installment redemption.
 
 See: In re Miller,
 
 4 B.R. 305 (Bkrtcy.E.D.Mich.1980);
 
 In re Zimmerman, supra; In re Schweitzer,
 
 19 B.R. 860 (Bkrtcy.E.D.N.Y.1982);
 
 In re Stewart,
 
 3 B.R. 24 (Bkrtcy.N.D.Ohio 1980);
 
 In re Hart, supra; In re Whatley,
 
 16 B.R. 394 (Bkrtcy.N.D.Ohio 1982);
 
 In re Cruseturner,
 
 8 B.R. 581 (Bkrtcy.D.Utah 1981);
 
 In re Carroll,
 
 11 B.R. 725 (Bkrtcy.Panel 9th Cir.1981),
 
 rev’ng
 
 7 B.R. 907 (Bkrtcy.Ariz.1981).
 
 Contra: In re Clark,
 
 10 B.R. 605 (Bkrtcy.C.D.Ill.1981).
 

 
 *1054
 
 An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempt under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such item.
 

 
 *1055
 
 The bankruptcy redemption provision, § 722, is a legislative derivative of the redemption provision of 9-506, Uniform Commercial Code. The official comment to 9-506 provides:
 

 “Tendering fulfillment” obviously means more than a new promise to perform the existing promise; it requires payment in full of all monetary obligations then due and performance in full of all other obligations then matured.
 

 The legislative history of § 722 does not reflect a Congressional intent which contemplated anything other than an intent to incorporate the fundamental requirement of “lump sum” redemption as suggested in the underlying UCC provision upon which § 722 was predicated.
 
 See: In re Cruseturner, supra,
 
 8 B.R. at 583-88;
 
 In re Miller, supra,
 
 4 B.R. at 307;
 
 In re Schweitzer,
 
 19 B.R. at 862, note 4;
 
 In re Hart, supra,
 
 8 B.R. at 1021-22;
 
 In re Zimmerman, supra,
 
 4 B.R. at 740.
 

 More importantly, the redemption remedy of § 722 must be construed
 
 in pari mate-ria
 
 with the reaffirmation provision, 11 U.S.C. § 524(c), which pertinently provides:
 

 (c) An agreement between 'a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—
 

 (4) In a case concerning an individual, to the extent such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreements as—
 

 
 *1056
 
 (B)(i) entered into in good faith; and (ii) in settlement of litigation under section 524 of this title, or providing for redemption under section 722 of this title.
 

 Section 524(c) authorizes a Chapter 7 debtor to seek renegotiation of the terms of the security agreement with the creditor thereby creating an alternative method pursuant to which a debtor may attempt to retain possession of secured collateral. Such an alternative, obviously attractive to the debtor financially unable to redeem the secured collateral through a lump-sum payment, is the equitable complement to § 722. See:
 
 In
 
 re
 
 Cruseturner, supra,
 
 8 B.R. at 583
 
 et seq.
 
 Simply, a debtor incapable or unwilling to tender a lump-sum redemption and redeem the secured collateral for its fair market value may reaffirm with the creditor; contrawise, a debtor confronted with a creditor unwilling to execute a renegotiation may retain the secured collateral by redeeming it for its fair market value, which value may be substantially less than the contractual indebtedness. However, § 524(c) facially contemplates that the creditor, for whatever reason, may reject any and all tendered reaffirmation offers; § 524(c) envisions execution of an “agreement” which, by definition, is a voluntary undertaking.
 
 See: In re Whatley, supra,
 
 16 B.R. at 396. Accordingly, if a debtor is authorized by the bankruptcy court to redeem by installments over the objection of the creditor, such practice would render the voluntary framework of.§ 524(c) an exercise in legislative futility.
 
 See: In re Miller, supra,
 
 4 B.R. at 307-08. Phrased differently:
 

 Of course, if Section 722 payments could be made by installment, no debtor would ever have reason to reaffirm under Section 524(e)(4)(B)(ii), since, by right, he could obtain under Section 722 the same end — continuing possession of his property — under the same terms — payment by installment — for what would often be a significantly lower price. Thus, installment payments under Section 722 would render useless Congress’ carefully laid scheme for voluntary agreement under Section 524 — clearly indicating that Congress had no intention to allow such payments under Section 722.
 

 In re Hart, supra,
 
 8 B.R. at 1022.
 

 Further, authorization of installment redemption would interpose into Chapter 7 a procedure which Chapter 7 is ill-equipped to implement. A Chapter 7 proceeding, whereby the debtor is discharged through liquidation, may conclude prior to the expiration of the installment payment period. A default by the debtor subsequent to discharge — possibly predicated upon a waste of the collateral, inability to meet the monthly installments or lack of motivation to continue payments on a rapidly depreciating collateral such as a vehicle — would burden the creditor with the expense and effort of reapplying to the bankruptcy court for relief.
 
 [4]
 

 See: In re Hart, supra,
 
 8 B.R. at 1022-23 (rapidly depreciating collateral). A bankruptcy court’s inability to effectively monitor the installment program and to expeditiously and meaningfully enforce the installment redemption raises serious issues of adequate creditor protection.
 
 See: In re Cruseturner, supra,
 
 8 B.R. at 588 (“Chapter 7 bankruptcies are just not equipped with the procedure to enforce re-demptions in installments”).
 

 A Chapter 7 debtor may assume the anomalous position of being financially unable to redeem the secured collateral by a lump-sum payment and concurrently incapable of persuading a creditor to reaffirm. However, a debtor’s inability to exercise the § 722 option of redemption, in the absence of
 
 installment
 
 redemption, cannot serve as
 
 *1057
 
 a basis for the bankruptcy court to abdicate its judicial function of statutory interpretation and resort to legislation by judicial decree.
 
 See: In re Miller, supra,
 
 4 B.R. at 809, citing
 
 West Coast Hotel Co. v. Parrish,
 
 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). As has been aptly observed:
 

 Congress was well aware that the typical debtor might well find lump sum redemption unavailable and therefore provided a mechanism for achieving an installment redemption, to wit, by consensual agreement. That this mechanism may well be imperfect cannot be gainsaid; ... it may well be short circuited by the recalcitrant creditor who refuses to come to terms. But those deficiencies are more properly directed to Congressional review, and consequently, provide a poor excuse for judicial legislation.
 

 In re Schweitzer, supra,
 
 19 B.R. at 864 (footnote omitted). While a bankruptcy court is invested with equity jurisprudence, application of that jurisdiction must comport to and remain compatible with the prevailing legislative intent.
 
 United States v. Killoren,
 
 119 F.2d 364, 366 (8th Cir.1941). A bankruptcy court’s imposition of installment redemption clearly contravenes the overall statutory scheme and destroys the delicate balance between § 722 and § 524(c), and therefore finds no sanction in principles of equity.
 

 Debtors posit that preclusion of installment redemption will precipitate situations wherein a Chapter 7 debtor will possess no viable method of retaining possession of secured collateral. However, a debtor may avoid such an untenuous position by initially filing a petition for bankruptcy under Chapter 13 or converting an existing Chapter 7 proceeding to a Chapter 13 proceeding. Chapter 13 is designed to provide a debtor with a fresh start through rehabilitation, unlike Chapter 7 which provides a fresh start through liquidation. As such, Chapter 13 authorizes redemption by installment over an objection by the creditor (a “cram down”), the very result sought in the action at bar. 11 U.S.C. § 1325(a)(5).
 
 See: In re Miller, supra,
 
 4 B.R. at 308;
 
 In re Schweitzer, supra,
 
 19 B.R. at 864, note 7;
 
 In re Stewart,
 
 3 B.R. at 25;
 
 In re Whatley, supra,
 
 16 B.R. at 397. In sum, construction of Chapters 7 and 13
 
 in pari materia
 
 discloses that within the overall statutory scheme a debtor desirous of retaining possession of secured collateral is accorded that election by filing a Chapter 13 petition.
 

 Lastly, the debtors maintain that no default had occurred under the terms of the security agreement and that, upon the trustee’s abandonment of the Van under 11 U.S.C. § 554, the debtors reacquired the collateral since they held the primary possessory interest. Debtors posit that they enjoyed the same rights after abandonment as before the filing of the bankruptcy petition including the right to continue monthly installments so long as no default, as defined by the security agreement, intervened. Under this theory, the right to continued possession of the secured collateral emanates from the security agreement rather than under a § 722 redemption. However, it has been recognized that a return of abandoned property to the party with the primary possessory interest (usually the debtor) merely provides that debtor with time to enforce his right to redeem the property under § 722 or to seek a reaffirmation of the agreement under § 524(c). The automatic stay of 11 U.S.C. § 362(a)(5) continues in effect, and prevents repossession by the creditor until the case is closed, dismissed, or discharge is granted or denied pursuant to 11 U.S.C. § 362(c)(2). Analyzing the relationship between § 362(a)(5) (debtors protection of the automatic stay) and § 554 (abandonment), the Court in
 
 In re Cruseturner
 
 has summarized:
 

 Accordingly, Section 362(a)(5) grants the debtor time to enforce rights in his property given him under Sections 722 and 524(c).
 

 The effect of Section 362(a)(5) is to provide the debtor with separate protection of his property. This enables him to exercise his right to redeem either by acquiring refinancing or by otherwise gathering the necessary funds, or to negotiate a reaffirmation. Unless earlier
 
 *1058
 
 relief is requested by the creditor, the creditor may not repossess property, despite any abandonment by the trustee, until one of the three acts specified in Section 362(c)(2) occurs ... The application of Section 362 to exempt property and abandoned property is co-extensive with the redemption right given in Section 722, for this right extends to exempt property as well as to non-exempt property which may be abandoned by the trustee. Likewise, the stay will cover property which may be the subject of reaffirmation agreements.
 

 8 B.R. at 592.
 

 Further, a serious issue exists as to whether the debtors held the primary possessory interest in the Van upon abandonment. The security agreement authorized GMAC to immediately repossess the Van upon the filing of a bankruptcy petition (bankruptcy clause). While this bankruptcy clause was initially inoperative under 11 U.S.C. § 541(c)(1), and the Van had become property of the estate under 11 U.S.C. § 544 irrespective of such clause, the § 541(c) prohibition against such a bankruptcy clause has been held inoperable once the asset has been abandoned from the estate.
 
 See: In re Schweitzer, supra,
 
 19 B.R. at 865
 
 et seq.
 
 Accordingly, the bankruptcy clause became effective upon abandonment, the debtors were in default of the security agreement and therefore no longer entitled to the primary possessory interest in the Van.
 

 Further, a discharge of the debtor’s personal liability on the security agreement through bankruptcy constructively vitiated Paragraph 6 of the security agreement which provides that “buyer shall be liable for a deficiency.” Negation of the creditor’s right to seek personal liability precipitated a default so as to empower GMAC with the primary possessory right to the Van.
 

 In sum, this Court concludes that redemption and reaffirmation constituted the exclusive methods pursuant to which the Bells could retain possession of the secured collateral. The sole method of redemption available to a Chapter 7 debtor under § 722 is a lump-sum redemption. Accordingly, the judgment of the district court is Affirmed.
 

 [1]
 

 . “Default” as predicated upon a provision of the security agreement which authorized GMAC to immediately repossess the Van upon the filing of a bankruptcy petition (bankruptcy clause) is discussed hereafter.
 

 [2]
 

 . Section 63 of the Technical Amendments Bill, S. 658 proposes the following Amendment to 11 U.S.C. § 722:
 

 § 722.
 
 Redemption.
 

 (a) The debtor may redeem property pursuant to the provisions of section 524(c) of this title or subsection (b) of this section.
 

 (b) An individual debtor may, whether or not such debtor has waived such right, redeem from the holder of a lien that secures a dis-chargeable consumer debt, tangible personal property intended primarily for personal, family, or household use, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying such holder at
 
 the time
 
 of redemption
 
 before the case is closed
 
 the amount of such holder’s allowed secured claim. (Emphasis added).
 

 Accordingly, Section 63 would expressly preclude installment redemption, thereby providing a legislative resolution to the very issue before this Court.
 

 However, S. 568 has not been enacted at the date of entry of this opinion. Further, Section 601(a) of S. 658 contemplates that the amendments would, in general, apply prospectively.
 

 [3]
 

 . “Fair market value” is incorporated into § 722 as follows:
 

 Section 722 allows redemption of payment of the “allowed secured claim,” defined in Section 506 as “the value of such creditor’s interest in the estate’s interest in ... property [on which the creditor maintains his lien].” 11 U.S.C. § 506(a). The determination of that value is to be made “in light of the purpose of the valuation and of the proposed disposition or use of’ the property. 11 U.S.C. § 506(a). Since the most likely use in most cases is sale for benefit of the creditor,
 
 see
 
 11 U.S.C. § 725, the value generally approximates the then market value of the property.
 

 In re Hart, supra,
 
 8 B.R. at 1022, note 2.
 

 [4]
 

 . Although a creditor will typically be exposed to the foregoing financial forces which may precipitate a default as defined by the security agreement, to-wit, payments may cease, insurance policies not procured or not renewed, etc., irrespective of the filing of a bankruptcy petition, the typical security agreement contemplates personal liability when the secured collateral is insufficient to cover the indebtedness resulting from the default. The creditor’s safeguard of seeking personal liability from the debtor will be removed by the debtor’s discharge in bankruptcy.