**In re Joseph Alton KUNSTLER & Donna Hemphill Kunstler, Debtor(s).**

**Bankruptcy No. 83–00512.**

United States Bankruptcy Court, M.D. Louisiana.

March 15, 1984.

Jack Patrick Harris, Baton Rouge, La., for debtors.

Charles Nelson Malone, Baton Rouge, La., Trustee.

## FINDINGS OF FACT

WESLEY W. STEEN, Bankruptcy Judge.

On May 9, 1983, Joseph A. Kunstler executed a promissory note payable to the order of American Bank and Trust Company in the Amount of $9,234.72, payable at the rate of $192.39 per month, beginning on June 10, 1983, with a total of 48 monthly payments.

To secure that note, Joseph Kunstler gave a chattel mortgage on a 1983 Dodge Pickup Truck.

The note provided that payments were due on the 10th day of each month, beginning June 10, 1983. The note further provided that "Failure to pay any installment on this note when due shall *ipso facto* mature this note in full".

The mortgage document provides in three different places that the note "shall be ipso facto matured without any putting into fault or presentment" upon the failure of the make to pay any installment punctually.

Payments under the note were made as follows:

| Payment Due | Payment Actually Made |
|---|---|
| June 10, 1983 | June 27, 1983 |
| July 10, 1983 | August 1, 1983 |
| August 10, 1983 | August 26, 1983 |
| January 10, 1984 | January 25, 1984 |

The other payments due under the note between June 10, 1983 and January 10, 1984, were either made timely, or else were made within a ten day grace period (the creditor in fact allowed ten days grace period for payments under the note whether or not he was actually required to do so by the documentation).

On August 4, 1983, Mr. & Mrs. Kunstler (hereinafter referred to as the Debtors) filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

On January 5, 1984, the Trustee filed a notice of intent to sell the mortgaged vehicle to the mortgage creditor for $7,454.02, plus $250 to be paid by the creditor to the Trustee as expenses in connection with the bankruptcy proceeding.

On January 10, 1984, the Debtors objected to the sale of the property.

The Debtor received a discharge on January 16, 1984.

On February 7, 1984, at the hearing scheduled on the Trustee's Motion to sell the vehicle, the parties conceded that the value of the mortgaged property was equal to, or less than, the amount of the lien against the property; thus there is no equity for unsecured creditors.

The parties have not specified whether the delinquent charges or other sums due under the note and mortgage have been paid, but for the purposes of this decision, the court assumes that they have been.

## CONCLUSIONS OF LAW

The Debtor maintains that the Trustee has no right to sell the property in question because all payments called for under the note have been made and consequently the entire sum due the creditor has been paid.

The Debtor argues that the creditor is attempting to require the Debtor to do one of the three things: (i) to reaffirm the debt; (ii) to redeem the property; or (iii) to suffer the creditor to repossess the collateral. The Debtors maintain that the creditor cannot require the Debtors to make such a choice. As authority, the Debtor cites the case of In Re Ballance, 33 B.R. 89 (Bkrtcy. Va., 1983). In that case, the court held that a creditor did not have the right to repossess property disclaimed by the Trustee when the Debtor was not in default in any way; the creditor was attempting to assert a repossession right under a security agreement; under that agreement, the creditor had the right to repossess collateral in case of bankruptcy. Although the parties apparently conceded that such a clause was invalidated with respect to the right to repossess prior to abandonment by

the Trustee, the creditor argued that the prohibited clause gained new life on the event of the abandonment of the property. Analyzed properly, the case is authority merely that the bankruptcy ipso facto clause is invalid, not only with respect to property constituting part of the Debtor's estate in a Chapter 7 proceeding, but also with respect to property abandoned by the Trustee; the clauses are simply invalid for all purposes.

Under the facts in the Ballance case, the creditor would apparently have had no right to repossession but for the filing in bankruptcy. The Court in the Ballance case simply held that the filing in bankruptcy did not of itself give the creditor the right to repossession when the Debtors were otherwise not in default in any way.

In the Ballance case, the Court analyzed at great length "adequate protection" and also considered, whether or not a Debtor can be made to reaffirm or redeem as his only alternatives to foreclosure by a creditor. Despite this wide ranging discussion, the holding of the case must be limited to the issue presented. That issue was whether a creditor would be allowed to repossess his collateral when his only grounds for doing so was the fact that the Debtor had filed a bankruptcy proceeding. The court held that the creditor could not repossess under those facts because of the invalidation of the bankruptcy ipso facto clause. That issue is not presented in this case. The Ballance case discussion about whether a Debtor can be required to choose among reaffirmation, redemption, or repossession is merely dictum.

For his part, the Trustee cites the case of GMAC v. Bell, 700 F.2d 1053 (6th Cir., 1983). (Interestingly, the Ballance case also cites Bell, but simply says that Bell is wrong). I do not agree. In Bell, the Trustee abandoned a van on which the creditor had a security interest. The creditor attempted to repossess its collateral and the Debtors counterclaimed, asking for permission to retain possession of the van contingent upon their continued payment of monthly installments. The Court found

that at the time the Debtors filed their bankruptcy petition under Chapter 7, the debtors had "tendered all monthly payments on their objection to GMAC and had otherwise not defaulted upon any term of the contract." The court in the *Bell* case was not required to deal with the issue presented in the case at bar. In *Bell*, the court was simply required to determine whether a redemption agreement pursuant to Section 722 of the Bankruptcy Code could call for installment payments of the redemption price, despite the Creditor's objections. The court held that the Debtor may not redeem in installments.

In reaching that conclusion, the *Bell* court looked to the entire Bankruptcy Code and reasoned as follows: Two remedies are available to a Debtor in case of consumer personal property encumbered by a lien: first, the Debtor may negotiate and conclude a reaffirmation agreement with the creditor; alternatively, the Debtor may redeem the property. The *Bell* court concluded that there is a delicate balance between these two remedies and found that in light of the legislative history and logic involved, the redemption could only be achieved by a lump sum payment. The court went further. In analyzing the entire code, the court concluded that if a Debtor wants to retain the collateral, the Debtor should file a Chapter 13 proceeding.

█ In the instant case, the creditor is even more entitled to the relief sought than it was in the *Bell* case. Under the facts found herein, the Debtors defaulted on the installment note four times prior to the filing in bankruptcy. Under the terms of the note & mortgage, those defaults *ipso facto* matured the note and made the entire principle balance due on the date of bankruptcy. Thus, in the instant case the court cannot find, as both the *Bell* and the *Ballance* courts found, that there was no default on the underlying obligation. In the instant case there was indeed a default, all sums due were not paid timely, and therefore the Debtors cannot be heard to complain that there are no defaults on the obligation.

Because of these defaults, and relying upon the authority cited in *Bell*, I conclude that a Debtor has no absolute right to prevent the sale of fully encumbered property merely by alleging that the total number of payments due have been paid.

A much more difficult case would have been presented if the Debtors had not defaulted in June and July of 1983. If that were the case, (or if the creditor had acquiesced in the defaults and thereby forgiven them) there would be no default, thus presenting more squarely the issue both in *Bell* and in *Ballance*.

Even if that case were presented, however, (if the creditor had acquiesced in the late payments, for example), this court would reach the same conclusion, primarily on the authority of *Bell*. The *Ballance* case is an unwarranted extension of the Section 362(a) automatic stay even subsequent to abandonment of the property and discharge. There is no statutory authority for such an extension of the stay.

In the instant case, if the Court denied the Trustee's request to sell the property to the secured creditor for the amount of the lien indebtedness, the Trustee would be permitted to abandon the property. When the Debtor has been discharged and the property abandoned, the automatic stay terminates with respect to the property and the creditor would be permitted to foreclose on the property in state court.

█ It appears in this case that there has been a default and consequently the foreclosure proceeding in state court would be permitted. If there had been no such late payment, however, as in the *Bell* and *Ballance* cases there would have been no defaulted payments and the right to foreclose might be based upon two alternatives: (i) The *ipso facto* maturity clause in the contract; and (ii) the loss of deficiency judgment rights against the Debtor.

> (i) The *ipso facto* clause—The *Bell* case holds that the *ipso facto* clause is valid as to property abandoned by the Trustee; the *Ballance* case seems the better reasoning, although it cannot be

said that the *Bell* results is without logical support. If the *ipso facto* clause is void, then it is void, not simply unenforceable until abandonment.

(ii) The loss of personal liability with respect to the Debtor clearly seems a loss and default that would give the creditor the right to repossess collateral. The *Bell* case so held:

"... a discharge of the Debtor's personal liability on the security agreement through bankruptcy constructively vitiated Paragraph 6 of the security agreement which provided that 'buyer shall be liable for a deficiency'. Negation of the creditor's right to seek personal liability precipitated a default so as to empower GMAC with the primary possessory right to the van."

The security agreement and note in the instant case clearly evidences such a personal obligation of the Debtors. The creditor's loss of this valuable right certainly constitutes a default under the documentation involved. It would appear to this court that such an agreement is implied in every obligation for personal liability on a loan secured by property. The creditor is concerned not only with his security interest in the property, but with his rights against the Debtors, personally. Loss of such a right would be a serious default and abridgment of the contractual agreement. The Debtor would have, in effect, converted a personal liability to an *in rem* loan, while maintaining the same right of possession and enjoyment of the collateral. Such a result certainly could not have been intended by Congress.

If it were, there may be serious constitutional problems since the creditors would be placed in a very precarious position indeed, and one to which he did not agree or contract.

If, as in the instant case, the value of the collateral is equal to, or less than, the debt secured, the Debtor has very little interest in safeguarding the property or in protecting the creditor's interest. The creditor is left at the mercy of the Debtor, who may accidently (or otherwise) damage the collateral, thereby destroying the creditor's interest. The collateral might disappear, or it might simply seriously depreciate in value. Having lost the personal right against the Debtor because of a discharge in bankruptcy, the creditor is then placed at the mercy of the Debtor.

More significantly, as the *Bell* case points out, there are alternatives available to the Debtor under which he can accomplish these objectives: Chapter 13. That chapter provides adequate safeguards for the secured creditor's interests and maintains the supervision of the court and the personal liability of the Debtor until the plan is consummated.

The courts should not upset this delicate balance and these careful procedural and substantive safeguards established by the rights of reaffirmation, redemption, and Chapter 13 merely by creating a judicial doctrine of Debtors rights to property.

Judgment will be rendered and an order granted authorizing the Trustee to sell the property as applied for.