**In re Richard L. ELICKER and Linda L. Elicker, t/a Linda's Auto Sales, Debtors.**

**CCNB BANK, N.A., Movant,**

v.

**Richard L. ELICKER and Linda L. Elicker, t/a Linda's Auto Sales, Respondents.**

**Bankruptcy No. 1–89–00062.**

United States Bankruptcy Court, M.D. Pennsylvania.

June 1, 1989.

Kent H. Patterson, Harrisburg, Pa., for debtor.

Leon P. Haller, Harrisburg, Pa., Trustee.

### MEMORANDUM

ROBERT J. WOODSIDE, Bankruptcy Judge.

Cumberland County National Bank (CCNB) has filed a motion to lift the stay so it can pursue its state remedies in repossessing a 1983 Toyota Celica GT–8 Lift Back. An answer has been filed by Richard L. Elicker and Linda L. Elicker (debtors) which in essence avers that debtors have equity in the car. A hearing was held, and the matter is now ready for decision.

The debtors filed their voluntary Chapter 7 petition on January 20, 1989. On January 24, 1989 the Clerk's Office sent the debtors notice that it was necessary for them to file additional documents to complete their petition. The notice provided:

### NOTICE

To complete the above-referenced petition, you must file in the office of the Bankruptcy Clerk within the time designated, the following documents:

1. List containing name and address of each creditor (Rule 1007(a)(1)) within (5) days. Chapter 7, 13, 11.

\*   \*   \*   \*   \*   \*

3. Schedule of assets and liabilities (Rule 1007(b)) within (15) fifteen days. Chapter 7, 11.

4. Statement of financial affairs (Rule 1007(b)) within (15) fifteen days. Chapter 7, 11.

\*   \*   \*   \*   \*   \* .

7. Schedule of current income and current expenditures (§ 521(1)) within (15) fifteen days. Chapter 7, 11, 13.

8. Statement of debtor(s) intention (§ 521(2)(A)) within (30) days after the date of filing on or before the date of the meeting of creditors, whichever is earlier. Chapter 7.

\*   \*   \*   \*   \*   \*

10. Matrix within (15) fifteen days. Chapter 7, 11, 13.

Unless these documents are filed within the time designated, an order will be entered to show cause why the case should not be dismissed.

On February 6, 1989, debtors moved to extend the time to file bankruptcy schedules, statement of affairs and related items. On February 9, 1989, I signed an order extending the time fifteen days from the date of the order. On March 9, 1989, debtors filed their second motion to extend time. On March 10, 1989, CCNB filed its motion to lift the stay. On March 13, 1989, I signed an order extending the time fifteen days from the date of the order. On March 24, 1989, debtors filed their answer to CCNB's motion to lift the stay. On March 29, 1989, debtors filed their third motion to extend time. On April 13, 1989, I signed an order extending the time ten (10) days from the date of the order. On April 28, 1989, the debtors filed the documents requested by the Clerk's Office.

A pre trial conference was held on CCNB's Motion to Lift the Stay on March 29, 1989, and the trial was held on April 21, 1989.

In their answer to CCNB's Motion, debtors admitted that they had not made any payments on the automobile since October 25, 1988 and that they were in breach of the note and security agreement. Moreover, the debtors' answer does not indicate that they intended to retain the Toyota. The court does not recall any testimony by Linda Elicker on this issue. The thrust of debtors' defense to CCNB's motion was that debtors had equity in the Toyota. Linda Elicker, who had experience in selling used cars testified that the Toyota was worth $6,500. She submitted an exhibit which listed all the extras which were on this particular car.

CCNB introduced an exhibit showing that as of the date of the hearing it was owed $6,212.15. Its expert who had owned and operated the Harrisburg auction for a number of years opined that the Toyota was worth considerably less than what was due the bank. He attached significance to the fact that the car had been driven over 100,000 miles. While he did not drive the car I find his opinion more reliable and thus find that the debtors have no equity in the car.

Obtaining relief from the stay is governed by 11 U.S.C. § 362(d) which provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

In this case CCNB has met its burden for relief both under section d(1) and d(2).

There is no equity in the Toyota and the question of effective reorganization is not relevant. CCNB is, therefore, entitled to relief under section 362(d)(2).

■ I also find that CCNB is entitled to relief under (d)(1) "for cause."

The filing of a petition under Chapter 7 precipitates the appointment of a trustee who is charged with the statutory duty of collecting and reducing to money the property of the estate for which he or she serves, and of closing such estate as expeditiously as possible. *See* 11 U.S.C. § 704(1). The bankruptcy filing also imposes a stay, applicable to all entities, of various actions against the debtor or the debtor's property or against property of the estate [1] pending the trustee's administration of the bankruptcy case.[2]

In the meantime, it has been held that there are only three options available to a Chapter 7 individual debtor who is in default on an obligation to a creditor having a valid non-avoidable lien which would allow the debtor to retain possession of the encumbered property. These options are: (1) redemption of the property under section 722 [3] by paying the fair market value of the collateral in one lump sum payment; (2) reaffirmation of the debt under section 524; or (3) conversion to a Chapter 13 and making payments in installments equal to the "cramdown" value of the collateral. *In re Peacock*, 87 B.R. 657, 658 (Bankr.D.Colo. 1988) *citing In re Bell*, 700 F.2d 1053, 1056 (6th Cir.1983); *In re Schweitzer*, 19 B.R. 860 (Bankr.E.D.N.Y.1982).[4] *See also In re Whitaker*, 85 B.R. 788, 793 (Bankr.E.D. Tenn.1988).

■ In cases such as the one at hand, where the creditor's lien is not challenged, the default is admitted, and the Chapter 7 Trustee does not oppose the lifting of the automatic stay, I believe that in order to justify the continued imposition of the stay individual debtors must raise the defense that they will seek to redeem or reaffirm the obligation or that they will be converting to a Chapter 13 case. In this case the debtors have raised none of those defenses.

In addition, as noted earlier the debtors have received a notice from the Clerk's Office informing them of the requirement to file a statement of their intention as required by section 521(1) and (2) of the Bankruptcy Code.

The Code was recently amended to require debtors to take certain action in regard to consumer debts which are secured by property of the estate. Sections 521(1) and (2) of the Code provide:

The debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of cur-

---

1. Section 362 of the Bankruptcy Code stays such acts as the commencement or continuation of legal proceedings against the debtor which are based on prepetition claims, 11 U.S.C. § 362(a)(1), actions to obtain possession or control of property of the estate, 11 U.S.C. § 362(a)(3), actions to create, perfect, or enforce against property of the estate or property of the debtor any liens which secure prepetition claims, 11 U.S.C. § 362(a)(4) and (5), or any other act to assess or collect a prepetition claim 11 U.S.C. § 362(a)(6).

2. The automatic stay continues in effect with regard to actions against property of the estate until the property is no longer property of the estate. 11 U.S.C. § 362(c)(1). Otherwise, the stay continues in effect until the earliest of (1) the time the case is closed; (2) the time the case is dismissed; or (3) the time the individual debtor is granted or denied a discharge. 11 U.S.C. § 362(c)(2).

3. Section 722 of the Bankruptcy Code provides:
   An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

4. The Court in *Peacock* noted that the *Bell* opinion "has been criticized in holding that the creditor can force the debtor to redeem the collateral or reaffirm the debt, or the creditor gets immediate possession of abandoned collateral despite no default in payments on the obligation." *Peacock*, 87 B.R. at 660. *Peacock* thus rejected "that portion of *Bell* and *Schweitzer* regarding the viability of the *ipso facto* clause, thus forcing a non-defaulting, Chapter 7 debtor to choose between redemption or reaffirmation where otherwise there is no actual default." *Id.* In the present case, however, the debtors admit that they are in default on their debt to CCNB. The more controversial portion of the *Bell* opinion, thus, does not apply in this case.

rent income and current expenditures, and a statement of the debtor's financial affairs;

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title [11 U.S.C. §§ 701 et seq.] or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title [11 U.S.C. §§ 101 et seq.];

11 U.S.C. §§ 521(1) and (2).

 The purpose of 11 U.S.C. § 521(2) is to provide a secured creditor with knowledge as to the debtors' intentions concerning the collateral in which the creditor holds a security interest. While there are often times when debtors need to obtain an extension of time to file the documents

required by 11 U.S.C. § 521(1), I am of the opinion that granting an extension of time to file the statement of intention should rarely be granted. I recognize in this case that debtors can argue that they received extensions which were signed by the court. However, I am of the opinion that the failure of the debtors to raise as a defense to the motion to lift the stay their intention to redeem the Toyota requires the requested relief to be granted for cause.[5]

An appropriate order will be entered.

---

5. As indicated earlier, the debtors in this case have made no payments since October of 1988. There was no evidence of any attempt at negotiations to reaffirm the debt. While the debtors did indicate in their statement of intention that they intended to retain the Toyota and reaffirm the debt to CCNB, this statement was filed 7 days after the hearing and is too late to be of benefit to the debtors. In any case, as the court noted in *Bell,* a reaffirmation agreement contemplated by section 524(c) is, by definition, a voluntary undertaking and a creditor may, for whatever reason, reject any and all tendered reaffirmation offers. *See Bell,* 700 F.2d at 1056. A statement of intention to reaffirm is thus more in the nature of a basis for settlement negotiations than an absolute defense to a motion by a creditor to lift the automatic stay.